Henry Liebundguth, Appellant, v. Russell Firebaugh, Appellee.

Gen. No. 41,042.

Opinion filed April 14, 1941.

BERNARD W. MAGES, of Chicago, for appellant.

ARTHUR ABRAHAM, of Chicago, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendant to recover damages of $1,381 being the face value of three real estate bonds aggregating $1,100 and interest thereon. Defendant denied liability. There was a trial before the court without a jury, a finding and judgment in defendant's favor and plaintiff appeals.

The record discloses that February 10, 1926, the owners of an apartment building located at the northwest corner of Sunnyside and Hermitage avenues, Chicago, executed a trust deed conveying the premises to defendant to secure a bond issue of $90,000; that afterward plaintiff bought three of the bonds paying par for them, or $1,100; that Firebaugh and others whom he controlled brought about the execution of the trust deed and bonds. The bonds and interest were payable at defendant's place of business. In 1929, defendant, as trustee, filed a suit in the superior court of Cook county to foreclose the lien of the trust deed and January 20, 1930, a decree of foreclosure was entered in which it was found there was $83,500 due the bondholders and other costs and expenses of foreclosure, making a total indebtedness of $93,044.68; that February 13, 1930, the master sold the property to Firebaugh, as trustee, for $82,000; he bid in the property for the bondholders without the payment of any money or without the production of any bonds; that some time thereafter Firebaugh, as trustee, assigned the master's certificate of sale to Paul F. Rogge, who executed bonds aggregating $98,000 secured by a new trust deed on the same property in which Firebaugh was also named as trustee, and afterward when the master's deed issued a supplemental trust deed confirming the prior one was executed by Rogge who then quitclaimed the property to Ida Wagner, secretary of the bond and mortgage company which was controlled by Firebaugh. The foreclosure suit, the sale of the property and the execution of the

new mortgage, etc., were all unknown to plaintiff who received his interest regularly from the bond and mortgage company until February 1932, when he called for payment of interest and was then informed of what had been done and that he had a right to exchange his bonds for new bonds of the $98,000 issue, which he refused to do. In 1937, Firebaugh, through his bond and mortgage company and counsel, organized a building corporation known as the 4500 North Hermitage Avenue Apartments Corporation, and thereafter Ida Wagner executed a quitclaim deed conveying the premises to the building corporation. There was a default in payment of the new bond issue and another foreclosure suit brought in the superior court to foreclose the lien of the trust deed and decree of foreclosure entered. Sometime thereafter the building corporation filed its petition for a reorganization under § 77B of the Bankruptcy Act in the District court of the United States in Chicago where the matter was heard, a plan of reorganization approved, by which the new bonds and the old bonds which had not been surrendered in exchange for new bonds were to share on a parity in the reorganization plan. The trust deeds were to be canceled and released and the building corporation to receive 8% of the stock to be issued by a new corporation to be organized pursuant to the plan of reorganization.

Plaintiff refused to exchange his bonds or to accept stock under the plan of reorganization approved by the Federal court. He contends he was damaged by the wrongful acts of Firebaugh in surrendering the master's certificate and in causing the execution of the new bond issue of $98,000, which plaintiff contends was done without authority and was but a part of the scheme of Firebaugh to cheat and defraud the bondholders.

Defendant's position is that after the foreclosure of the first bond issue and the sale of the property to him, as stated by his counsel, "In an attempt to

reorganize the property the Master's Certificate of Sale was assigned to Paul F. Rogge, admittedly the nominee of the Trustee and the new trust deed securing bonds aggregating the principal sum of $98,000 was placed on the property.

"It was then sought to exchange the new bonds for the old bonds. All of the bonds were exchanged except $23,500 of the old issue which remained unexchanged.

"Since all of the bondholders did not exchange the old bonds for the new bonds the proposed plan of voluntary reorganization was filed."

We think what defendant did in surrendering the master's certificate and causing the new trust deed and bond issue of $98,000 to be issued was wholly without authority and was so found by the United States Circuit Court of Appeals in an opinion, *In the Matter of 4500 North Hermitage Avenue Apartments Corporation,* filed March 20, 1941, growing out of the reorganization under § 77B of the Bankruptcy Act. We delayed disposing of the case at bar pending an opinion from the United States Circuit Court of Appeals. That court in its opinion said: "The Master making the sale issued a certificate of sale to Russell Firebaugh, as trustee, under date of February 13, 1930. Before the period of redemption had expired, Firebaugh, as trustee, assigned such certificate to Paul F. Rogge without any consideration and without the knowledge or consent of the bondholders, or any of them, for whom he was holding such property as trustee. No authority for this transfer can be found in the trust deed and it is entirely beyond the powers created by that instrument. Shortly after the assignment, Rogge and his wife proceeded to execute bonds . . . of $98,000. To secure the payment of such bonds they executed a trust deed on May 9, 1931 to Russell Firebaugh, as trustee, . . . notwithstanding the facts that the period of redemption had not yet expired

and that Rogge held no deed for such property, the Master's deed not having been delivered to him until February 17, 1932. These bonds, both principal and interest, were to be paid at the office of The Bond & Mortgage Company, of which company Russell Firebaugh was at that time president. . . . there was due under the former bond issue . . . the principal amount of only $79,500 or $18,500 less than the principal amount'' of the new issue. The court continues and states a number of facts as to what was done by Firebaugh and in answer to his contention that considerable money had been spent in the operation of the property and for legal expenses, etc., said: ''In answer to this contention the evidence fully supports the contention of appellees that The Bond and Mortgage Company was operated by Russell Firebaugh, its president, and that all acts were done by and through him; that the company collected the rents from such property for some time both prior to and after the appointment of a receiver by the Superior Court in the foreclosure proceedings; that it had been reimbursed for all expenditures; that it was, in fact, indebted to the bondholders of the Belvidere issue, [old issue] . . .

''It seems that Russell Firebaugh was the person who planned and executed all of the various transactions which finally resulted in appellant, Cloverdale State Bank, acquiring possession of these bonds. [some of the new bonds] The ramifications are so extensive that they are really difficult to comprehend; however, it is apparent that each move was preconceived by him with the ultimate purpose in mind of profiting by such transaction without regard to the interest of the owners of the property or of the bondholders. It was he who was named trustee in the Belvidere bond issue; it was he, through the company of which he was president, who sold these bonds to the investing public and collected the rent from the

apartments for a considerable length of time; it was he, as trustee, who instituted the foreclosure proceedings in the Superior Court and obtained a decree of foreclosure and sale . . . it was he, as trustee, who purchased the property at the foreclosure sale for the benefit of the bondholders; it was he, as trustee, who received from the Master a certificate of sale for such property and within a short time thereafter transferred this certificate to Rogge without any authority so to do, without consideration, in violation of his trust and within the period of redemption; it was he who was named trustee for the bondholders in the trust deed executed by Rogge in the Hermitage bond issue of $98,000, or $18,500 more than was necessary to retire the Belvidere issue; it was The Bond & Mortgage Company, of which he was president and had control, that retained possession of the excess bonds which included the bonds in question until they were pledged as collateral with his mother to secure the payment of a pre-existing debt evidenced by a promissory note of that company . . . but for which bonds no consideration was paid by either himself or the company . . . it was he, together with the secretary of the company, Ida Wagner, who had authority to visit the safety deposit box of his mother."

All of this and much more was said by the United States Circuit Court of Appeals in passing on the claim filed in the bankruptcy court by the Cloverdale State Bank which claimed to own certain of the new bonds in holding the claim was properly disallowed by the District court.

Counsel for plaintiff, in discussing how plaintiff was damaged by the conduct of Firebaugh, and which we think is sustained by the record, says, "Plaintiff's bonds are now part of an indebtedness of $106,000 instead of $82,000, said new indebtedness consisting of the Rogge mortgage" for "98,000 plus eight per cent for the purchase of the title of the 4500 North

Hermitage Avenue Building Corporation, which means that this dummy corporation will be the owner of $24,000 in stock on a parity with the plaintiff's bonds, without having paid one cent for the title or the bonds.''

Firebaugh's conduct being wholly unauthorized and plaintiff having sustained damages as a result of such conduct, he is entitled to recover. *Wertheimer v. Glanz*, 277 Ill. App. 389. In that case suit was brought to recover $600, the face value of bonds which were secured by a trust deed on two pieces of property, one of which had been wrongfully released by the trustee, and it was held plaintiff was entitled to recover. We there said, in referring to *Sherwood v. Saxton*, 63 Mo. 78, a case where a trustee wrongfully released a trust deed: ''The opinion says that the trustee in a deed of trust to secure an indebtedness is the agent of both parties, debtor and creditor, and his duties must be performed with the strictest impartiality and integrity; that if he is guilty of a breach of trust or an abuse of his discretionary powers he will be personally responsible to the party injured, and that he would not be justified in releasing any security unless it would be clearly to the advantage of the *cestui que trust*. . . .

''We think it is evident that it was to the hurt of the plaintiff and other bondholders when the trustee released the more valuable of the two properties, leaving as security only the poorer property which, by the defendant's own showing, is not worth the amount of the mortgage indebtedness. Clearly this was a breach of trust on the part of the trustee. . . .

''We see no reason to disturb the judgment, and it is affirmed. If this judgment is paid by defendant, in fairness the notes should be turned over to him so that he may proceed upon them as he may see fit.''

From what we have said we think it clear defendant's contention that plaintiff's suit is in effect ''A

bill for accounting against a trustee for alleged misfeasance in office'' and that the municipal court has no jurisdiction of such inequitable proceedings cannot be sustained. Plaintiff's action is for damages sustained by him through the wrongful conduct of the trustee in administering his trust.

The judgment of the municipal court of Chicago is reversed and judgment entered in this court for $1,381 in favor of plaintiff and against defendant, and as stated in the *Wertheimer* case, if this judgment is paid by defendant the three bonds should in fairness be turned over to defendant Firebaugh.

*Judgment reversed and judgment here in favor of plaintiff.*